Good morning. We have the last case for the calendar for today. Charlotte Salinero v. Johnson & Johnson. It's Mr. Ferraro and Ms. Moldovanew. I hope I pronounced that correctly. Are you ready to go? Yes, Your Honor. Perfect. Mr. Ferraro, would you like to save four minutes for rebuttal? Yes, Your Honor. All right, perfect. Thank you very much. You may proceed, Mr. Ferraro. Thank you. May it please the court, I'm Jim Ferraro here on behalf of the appellants, Charlotte Salinero and Dr. Efron Salinero. This case involves summary judgment on an intermediary case. It's a case that fits squarely within the confines of Aubin, which is the 2015 Supreme Court decision. There's no necessity for any type of eerie guess. Aubin is, the genesis of Aubin was the second restatement of torts, which created basically learning intermediary defense in a prescription drug context. And this is as close to a prescription drug case you can get as a prescription medical device. The linchpin of Aubin is reasonable reliance on the intermediary. What does that mean? It's premised on objectivity, independence, and specialized knowledge of the intermediary. That's what you have to have is the foundation for the intermediary to qualify for the defense. The second prong, which is part of the critical analysis of Aubin is the warning. Okay? The critical analysis in Aubin is, was the manufacturer reasonable in relying on the intermediary to warn the end user? And did the manufacturer fully warn the intermediary? And there's other great language in Aubin that one that specifically fits the facts of this case is that you cannot rely, reasonably rely on an intermediary when he knows that the warnings make the product less valuable, which, and which provides an incentive to the intermediary to withhold that information from the patient. That's exactly what we have in our case. Now, who's our intermediary and what was in the warning? Well, Dr. Sepulveda was a great training doctor. He's, he's- Let me ask you just this question. You cite Aubin as an example of an instance where the learned intermediary doctrine would not apply. Are there any cases in Florida, and I couldn't find any in law, are there any cases either in the Supreme Court of Florida or in any of the five district courts of appeal where they have applied this Aubin idea to a circumstance where we're referring to a physician? Not directly, not directly- That's what I'm asking. Have they ever extended the doctrine that you referenced in Aubin to a situation where the physician is the intermediary? Well, in the Southern District in Goodnight versus Boston Scientific, 2020, it's a Westlaw, it's a January 21, 2020 case, Goodnight versus Boston Scientific. It's a polypropylene mesh manufacturer that, that used Aubin and that the manufacturer may, may be able to rely on intermediary to relay warnings to the end user. So it did come up in the Southern District. No, no, no, that's not my question because I am eerie bound to follow the law as given to us by the highest court of the state, which is the Florida Supreme Court, or if there's nothing there, perhaps looking to the five district courts of appeals. I'm asking specifically whether there is any case in the Supreme Court of Florida or in any of the DCAs that have extended the Aubin doctrine to a circumstance where the intermediary is a physician. Not specifically, Your Honor, there's not a- Mr. Ferraro, let me, let me ask you this question. With this case, and I'm going to ask this to opposing counsel as well, is this a case that would benefit because we're dealing with Florida's substantive law from a certification to the Florida Supreme Court? I don't think so, because I think that it fits within the general proposition of Aubin that what you look for in an intermediary is objectivity. I don't think it necessarily matters. But the Florida Supreme Court has not spoken on this directly, correct? There is no case on this, whether an exception exists. No, factually, is there a case that involves a medical device? There is not. But does Aubin, our position is that Aubin is broad enough that it covers that because it does not make a distinction between that particular case as an asbestos case. And that, I think, is much further removed on an intermediary because here- But we don't make it a general practice to speak on a state substantive law when we can certify a question. Yeah. I mean, it could be certified, clearly it could, but I think it fits clearly within the exception of Aubin because of the financial bias that we have in the intermediary. We have an intermediary here. It's really about- But the Florida Supreme Court, again, has never spoken on whether or not there is an exception to the learned intermediary doctrine as to whether there's a financial bias exception. Has there been a specific statement that I think, no, but I do believe it fits within the confines of Aubin. I don't think- Let me tell you the problem that I have with that. It seems to me that it requires a real and substantial jump from the body of law we have now to the point you want to make, which is that a learned intermediary who is a physician can, by virtue of a financial interest, create an exception. Maybe the Florida Supreme Court will get there someday. Maybe the DCAs will get there someday. But the problem I have is it seems to me there's a significant difference between a physician who has significant education and training, understands the complexities of drugs or medical devices, and is arguably in a meaningfully different position than the intermediary manufacturer of construction materials, which include asbestos. I don't find the movement from A to B inevitable, ineluctable, maybe not even likely. And so that's why I'm having some difficulty extending and discarding the long-standing learned intermediary doctrine and extending an exception from one context into an arguably different context. Florida's courts may do that, I suppose, although if they step down that road, they will find great difficulty in answering the question of when the Dr. Learned Intermediary has basically sold out his oath and his obligation to the patient so completely. But I, you can understand, am very reluctant to read the arc of Florida decision-making law as making that leap without someone telling me that there's some reason, prospect that they would do it. You follow the concern that I have. No, and I think it's a very legitimate concern, Your Honor. But I do believe on the facts of this case, what transpired below, because remember here, the question is, this should go to the jury. Typically, the learned intermediary defense goes to the jury to determine reasonable reliance. So what happened here is the court found as a matter of law, okay, that a learned intermediary, that's a physician, okay, is objective and independent, even though he's given dozens of depositions for Ethicon, has made over $2 million, averages over $335,000 a year, was a non-retained expert in this particular case, and was paid, which in essence makes him an expert, at $500 an hour and $3,500 a day to testify at deposition. So, I mean, that's the ruling we have right now in the Southern District, that as a matter of law, that that particular intermediary, that question with those facts should not go to a jury. See, that's really the issue in our opinion. And here are the experts- You see, all I'm really saying is it's a very complex question to determine whether the relationship between an independent physician and the manufacturer is such that by virtue of some financial relationship, the physician has in fact discarded any independence in the making of medical judgments. I don't say that can't happen. I'm simply saying it would take a tall order of evidence to get you there, and the Florida courts have never once stepped their toe in that water. That's my problem. No, I understand, Your Honor, but listen, here you have an expert. Essentially, this guy's an expert. He's testified dozens of times with them. He's paid in this case, okay? If he was an expert, there'd be no question it goes to the jury and he gets subject to cross-examination. This witness, okay, did not go to the jury, and if you look at the answers that he gave, I think that alone shows some bias. I'm giving an example, Your Honor, and I understand where you're coming from, but I do understand your concern, but he gave textbook answers. I knew the risks. I didn't rely at all on the manufacturer's instructions for use. That's what he said, and he also, I stand by my decision despite the horrendous results that we had here, but here's the kicker. He also testified that he basically rolled over, Your Honor, on informed consent, okay, which a good physician, you know, would get informed consent. He said, I chose artisan without telling the patient, and he also testified that he didn't tell the patient all the risks of this product, and of course, the patient would not have done it if the risks were known, and there's horrendous risks here, so the fact that, I mean, just the mere testimony itself, Your Honor, shows bias that he just rolled over on informed consent. He wasn't a defendant in the case. Should he have been? I would have loved to have had him in the case. Does that mean he wouldn't have been responsible? It would have been a slam dunk on informed consent, Your Honor. Do you think that a good doctor would do that, roll over on informed consent? I chose artisan without telling the patient, and I didn't tell the patient all the risks. I understand he's there to, you know, to protect what he's there to protect, and that's what he does when he testifies as an expert. He's hired to protect the client. The one case that you cite, yes, the proposition in Reed DePue orthopedics coming out of the Northern District of Texas for the proposition that you might build in an exception to the learned intermediary doctrine for physicians involved a physician Heinrich who, quote, agreed not to sell, evaluate, or promote non-DePue products. In that circumstance, he bargained by contract, never did he not use the product of the manufacturer. You don't have anything like that. I'm not saying that the case law might not get there someday where a guy has paid a lot of money by a drug manufacturer but makes his own independent judgment anyway. If the bucks are big enough and the circumstances are egregious enough, it's possible. But boy, even if I look at the law elsewhere, the only case you can give me is DePue where the doctor agreed by contract not to sell, evaluate, or promote a non-DePue product. Is there anything other than that where any court has ever built in an exception to the learned intermediary doctrine? DePue, Your Honor, had other doctors in the case. That was one of the four doctors they talked about. The others had much less egregious facts than those. So that doctor was one of the bundle. The other doctor, in particular, I forget his name, but there's four doctors they talked about. The other doctor did not have that same set of facts. And that was like, and that also passed as, you know, to set aside the learned intermediary defense. So, I mean, there's other cases like, you know, we've got Ethicon. Ethicon is really Dr. Margolis. You let him testify about the IFU. That's more about his testimony, which is part two. That's the second problem that got knocked out here. But we, you know, the issue really here is that Orban is premised on the restatement of torts. It's mentioned time and time again, including in the context of learned intermediary. They essentially adopted it. And by the way, in that case, I actually argued that case at the Florida Supreme Court. That also, they also resolved consumer expectation. That was basically an adoption of the second restatement of torts. But in this regard, they mentioned it over and over. If you look at the second restatement of torts, it very clearly says that the genesis of the defense is prescription drugs. Prescription drugs, you know, I mean, this is a prescription medical device. I mean, that's what they adopted in Orban. So, I think the Supreme Court has spoken on it, Your Honor. I mean, I understand it's not as simple. It doesn't jump right out. If you read Orban closely, all they talk about is the second restatement, including on the intermediary defense and definitely on the consumer expectation defense. And so, I think that, you know, I think they had implicitly spoken, maybe not even implicitly, because of the adoption of the second restatement. And I think that you need to take the, of course, take the general rule of law, but does it fit within it? Does it fit within the second restatement of torts? It absolutely fits within the second restatement of torts. I think it's no ifs, ands, or buts it fits within the second restatement of torts. Mr. Ferraro, you've gone over your time. I'm sorry. I'm sorry. That's fine, Mr. Ferraro. You'll have four minutes remaining for rebuttal. Thank you. Ms. Moldavenu, did I say it correctly? Moldavenu. Thank you. I apologize. Thank you. May it please the court. My name is Susanna Moldavenu, and I represent the appellee at the CONINC. To prevail on appeal, plaintiffs must establish two things. First, they must show that the district court erred in declining to adopt a financial bias exception to the learned intermediary doctrine, which has never been adopted by any Florida court, and which has been rejected by the vast majority of courts around the country to have considered it. Plaintiffs must also show that the district court abused its discretion when it excluded expert Dr. Margolis. When plaintiffs did not make any of the arguments below that they now make on appeal about the supposed scope of Dr. Margolis's opinions, plaintiffs must prevail on both issues to obtain reversal. They cannot prevail on either. I'd like to begin by addressing the Obenn decision, which plaintiffs now claim here on appeal directly addresses the issue at hand. It does not. Plaintiffs ask this court to discard Florida's well-settled learned intermediary doctrine by adopting a so-called financial bias exception. Counsel, would it not be appropriate for this court to certify to the Florida Supreme Court a question as to whether or not there should be a, or if there is a, an exception to the learned intermediary doctrine for financial bias? The court should not certify this. There's no need. This, Obenn just simply does not apply here. And more than 30 years ago in Felix versus Hoffman LaRoche, the Florida Supreme Court was clear that the manufacturer's duty to warn in the, in the prescription drug context is directed to the physician rather than the patient. Let me ask you a question because when that doctrine first came into being, pharmaceutical companies certainly were not advertising directly. You didn't turn on your TV and have multiple pharmaceutical ads directly to a consumer, correct? I have no basis to say one way or the other on that, but I'll agree with your honor for purposes of this. But, but you understand what my, my, my point is, is that when this doctrine came into being the doctor and the pharmaceutical company were the ones that were in communication. And now you have pharmaceutical companies who are actively promoting and advertising to consumers directly. Do you dispute that? Not in the context of this case, your honor. This case does not involve any allegation of direct to consumer advertisement. That is a totally different allegation, which is made in some other contexts. This case involves a surgically implanted medical device, which can only be obtained through a surgeon. The claim here is not a direct to consumer advertising exception to the learned intermediary doctrine, which is that's counsel. That is not what I was asking. The question is, would it not be appropriate to certify this question to the floor Supreme court, because the concept behind the doctrine has changed. There's no need, even if the concept may have changed for another case, perhaps that this court might consider, there's no reason to call it into question in this case, which involves this so-called financial bias exception. I'd like to address some of those allegations about the open to decision to explain why this doesn't fit. Open did not involve the doctor patient relationship at all, but rather it was an asbestos case. The manufacturer made asbestos pellets, which sold were then sold to an intermediary who turned them into a finished product. The question then before the Florida Supreme court there was whether it was reasonable for the manufacturer to expect that the intermediary would pass the warnings on to the ultimate consumer. If it was not reasonable, then the manufacturer should have provided the warnings directly to the consumer or otherwise made sure the consumer was warned. That is not what the plaintiffs argue here. The plaintiffs do not argue that a manufacturer of a surgically implanted medical device should bypass the surgeon and provide warnings directly to a lay person patient, but that would be the effect of plaintiff's so-called financial bias exception. That would be contrary to Florida law, which has repeatedly indicated that it is reasonable for manufacturers to expect that doctors will pass warnings onto their patients. That is the essence of the doctor relationship and the informed consent doctrine. There's nothing in open that indicates that it was intended to undermine that relationship. And as judge Marcus noted, it has never been applied in the manner proposed by the plaintiffs here. It's really wrong even to call plaintiff's proposal here an exception at all. The plaintiffs have not cited a single case where a court has applied what it deemed an exception to the learned intermediary doctrine. Instead, they simply rely on a small handful of cases that find an issue of fact on causation. Counsel, let me ask you a question, which is related to the issue of whether or not we should in properly conclude that no reasonable jury could find that this doctor refused to honor his legal and ethical obligations to the client and refused to exercise independent medical judgment. If we can find that no reasonable jury could find that on these facts, then we probably should not certify. Are the facts here so egregious that a reasonable jury could find that the doctor did not, in fact, exercise independent medical judgment? These facts do not meet that standard, though I'll note that we're at summary judgment and the plaintiff has to establish a genuine issue of material fact. But unlike plaintiff's allegations here that Dr. Sepulveda simply gave textbook answers, Dr. Sepulveda's testimony was not simply conclusory. In his deposition, Dr. Sepulveda explained in detail why he chose the He walked step by step through the decision-making process. He explained that given the severity of Ms. Salinero's prolapse, a surgical repair was needed. He explained why he chose the explaining that it would provide her a more durable result. The abdominal sacrocopalpexy procedure is done with surgical mesh. And then Dr. Sepulveda explained in detail why he chose the artisan mesh specifically over the other meshes available. He said that the artisan was a monofilament mesh that had the largest pore size, that polypropylene mesh had the best data, that he preferred the partially absorbable component of the artisan. Dr. Sepulveda testified that he had been using the polypropylene mesh in sacrocopalpexy procedures since 1992, that is, 20 years before plaintiff's surgery, and that he found it was a safe and effective treatment for prolapse patients. In fact, Dr. Sepulveda testified that if he were doing an abdominal sacrocopalpexy that afternoon, he would still use the artisan mesh. There is nothing in this record that creates a genuine issue of material fact regarding this testimony. In fact, the plaintiff's expert, Dr. Margolis has no quarrel with Dr. Sepulveda's treatment decisions. Dr. Margolis himself agreed that surgery was an appropriate option for Ms. Salinero, and that Dr. Sepulveda's decision to perform sacrocopalpexy was part of the standard of care. In the Fourth Circuit case involves, as I recall, $250,000 a year paid to the doctor, plus he had stock interest, and they held in effect that no reasonable jury could find that the doctor would violate his legal and ethical duties. Why should we not so hold in a simple opinion that would not have to be certified to decide a hard issue? That's exactly correct, Your Honor. In the Talley v. Stanton medical case, the Fourth Circuit held that even there in Talley, the physician, like Dr. Sepulveda, taught medical device implantation procedures, but in addition, he received an annual consulting fee of $250,000, a research and travel budget, and 25,000 stock shares in the parent company. And even there, the Fourth Circuit held there was no evidence that the consulting relationship interfered with the doctor's independent medical judgment. The same is true here, and the court could simply hold that there is no evidence that the consulting relationship between Dr. Sepulveda and Ethicon interfered with Dr. Sepulveda's independent medical judgment in treating Ms. Salinero. That's especially so here, where the plaintiff's own expert, Dr. Margolis, agreed that Dr. Sepulveda's treatment decisions were reasonable. Let me ask you this question. Is it wise for us to go down that road? Is it wise for us to begin to develop the theoretical possibility that the learned intimidatory doctrine would be scrapped in an extreme case, like the one I mentioned with DePue and Dr. Heinrich? Should we get into this question of where you draw a line in Florida law for building in an exception for financial interest? There's no need, Your Honor. This case is no— No, but I'm asking you, is that something we ought to be doing? It seems to me if we did do it, Judge Anderson is right that this case would not be the case where you could say, you could reasonably infer that the doctor sold out his oath. But I'm asking whether we should even fool with that question and step down that road. It's really not necessary, Your Honor. This case is no different than other contexts in which this court has held that self-serving or interested testimony cannot simply be disregarded at summary judgment. On page 32 of their opening brief, the plaintiffs cite the Rubesa District Court opinion to say that self-serving test may not be disregarded by the district court typically. That footnote cites this court's opinion in Price v. Time, where this court said to hold that testimony under an oath by an interested party cannot be substantial evidence of a fact in that party's favor would undermine much of the law on summary judgment. The same is true here. Plaintiff's argument—if plaintiff's argument is accepted, then a court could never grant summary judgment based on a plaintiff's testimony because a plaintiff in a civil lawsuit like this one here almost always has a financial interest in the outcome. Summary judgment could always have an interest in the outcome. You mean every treating physician is taking some kind of consideration from a manufacturer of a surgical device or of a drug? No, Your Honor. I was referring to a plaintiff's testimony in a civil lawsuit. So a plaintiff in a civil lawsuit stands to have something to gain from the outcome in a case such as this potentially millions of dollars in a judgment. But the court does not simply disregard that testimony just because it's maybe self-serving. Self-serving testimony is not disregarded unless it's blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law. There's nothing in this record to call into question Dr. Sepulveda's plaintiff or his testimony. The only thing plaintiffs rely on is this so-called financial bias, and there's no evidence that he exhibited any such bias in this case. Your Honors, I have only a minute remaining, and I would like to also address the exclusion of Dr. Margolis's testimony. If we affirm on the learned intermediary issue, does that not moot, Dr. Margolis, the issue with respect to Dr. Margolis? It would, Your Honor, and conversely... Because the treating doctor testified that he already knew independently all of the risks. Oh no, Your Honor, it would not. I'm sorry, I misunderstood your question. The plaintiffs must have the testimony of Dr. Margolis to establish that a warning, it was inadequate. The plaintiffs don't contest that on appeal, expert testimony is needed in order to establish the inadequacy. Counsel, is it not true that the law is that even if the warning were deficient, if the doctor independently knew all of the risks that the plaintiff experienced, then the deficiency in the warning, it was not approximate cause of the injuries, and therefore, it seems like to me it moots the issue with respect to Dr. Margolis. That's correct, Your Honor. I'm sorry if I wasn't responding to you directly. That's why plaintiffs must prevail on both issues in order to obtain reversal. If I may just have one in the simplest terms, if he loses unlearned intermediary, we have no occasion to get to the question of Dalbert, Margolis in, Margolis out, in in part or out in part. Is that correct? That's correct, Your Honor, and conversely, the same is true. This court may decide the issue on the exclusion of Dr. Margolis' testimony as well. I realize I'm over time, if I may just be brief. In fact, in the Dalbert opposition briefing at all, plaintiffs did not cite a single since you want to walk down this path. Couldn't the doctor say, A, these are the risks associated with this kind of surgical procedure? B, some of these risks were in the notice and some of them weren't. That's what he could do, couldn't he? You mean without an expert to testify? He's an expert who could say, here are the palpable risks, A, B, C, D, E. If you look at the IFU, the notice itself, it referenced 12 possible risks. It did not reference any of the five risks I've enumerated. I'm not saying those are exactly the facts, but couldn't the doctor do that? Expert testimony would still be required to establish that the warning was inadequate, that there was a risk. No, I understand. I understand what you're saying at a very high order of abstraction. You're not zeroing in on my question. My question is, could not the district court have allowed the physician to testify? In my judgment, based on my training background and experience, these are the risks that obtain with this kind of surgery, with this kind of mesh, with this kind of procedure. Here are the 10 to you. What's in the report or the notice? The notice references five of them and not five more. I'm not offering an opinion directly about whether the notice is good or bad. I'm simply telling you these are the risks as far as I'm concerned. Some of them were included and some of them were not included in the notice. There'd be no way to prevent the doctor from doing that, would there? A doctor could offer that sort of testimony, but it still wouldn't be enough to meet the plaintiff's burden to establish that the warning was inadequate. Because even if you say these are what the risks are, it should still be established that the risks were known and that they should have been in the warning label at that time based on the state of the art at the time that the jury infer from a statement from an expert that these are the 10 serious risks. I know I've been doing this surgery for 30 years. Here are the risks. One, two, three to 10. And if you look at the IFU, the notice itself, it only references five. Could a jury infer from that that the warning was inadequate without another expert saying anything else about the notice? No, your honor. I wouldn't agree with that because I think you would still need an expert to say that these risks should have been. I reviewed the medical literature. These were known risks that existed that the manufacturer knew or should have known and they should have been in the label. But let me ask you a question because the way I understand the argument that you presented to the district court was that you basically want to have the person that testifies as to this be someone who is involved with the drafting of the IFU warning. So who exactly would you believe would be qualified to testify that the artisan label was adequate to warn doctors of the danger? Would it be the commissioner of the FDA? Who would satisfy that? I'm not, I can't say for certain who it would be, but it would not be Dr. Margolis. Again, the question is this, is why couldn't you have someone who testifies, I've done a thousand procedures involving these types of surgical procedures, and these are the potential risks. And this is what should have been on the warning label. But Dr. Margolis went further than that to say that the warning was quote inadequate. That was the, the ultimate opinion that was being offered. My question is, and you don't answer it, which is who would be the person that would be appropriate then to testify to that? Please give me one or two people who would be appropriate. A regulatory expert could talk about the standards for what should be in a warning label. An expert like Dr. Margolis. What would a regulatory expert have any knowledge of with regards to a surgical procedure and what kind of problems would occur with that kind of surgery? So a medical expert like Dr. Margolis could testify about what the risks of the device are. But when he goes that next step, like Dr. Margolis did here to say that the warning was quote inadequate, then he's getting into a regulatory determination of what should or should not be in an IFU. And that is where he went too far. Now, plaintiffs on appeal say, well, he wasn't trying to go that far, but they never told the district court that. The plaintiffs didn't tell the district court, well, we're not going to have Dr. Margolis go that far. We're not going to have him say that. Any random regulatory person, you can pick up from the FDA, someone who retired or now is going into consulting. They could be an expert then. They wouldn't be able to opine about the medical facts like Dr. Margolis, but they could explain what the standard is for a warning label and why something would or would not be included in the warning label. But plaintiffs didn't offer anyone like that. They just offered Dr. Margolis who was going to do all of it. As far as the district court was now on appeal, they've cited these cases that stop short of that. And they let the doctor talk about just the medical facts, which we would agree a doctor could do. But that was not what the plaintiffs argued here. They didn't cite before the district court, any of the case law that they now rely on to say that there was this portion of testimony that Dr. Margolis could offer. In fact, in that point- May I ask you a question though? Because for example, under Florida law, and I apologize because I don't have the case in front of me right now. I believe it's Upjohn. In Upjohn, the Supreme Court specifically said that with regards to a failure to warn, defendant's expert on the adequacy of the warning there was a doctor. So how is that not appropriate then when the Florida Supreme Court has said that for a failure to warn case, a doctor was sufficient as an expert? I don't believe the court in Upjohn was presented with this very argument, but we agree that doctors can provide relevant evidence about the warnings. It's just this inadequate. The Eighth Circuit and Reinfrank has recognized this distinction between a medical opinion and then this next step that Dr. Margolis sought to do, which was to say that the warning was quote inadequate. Are you then contending that Florida's substantive law on failure to warn would not be applicable? Because I would believe that we would be bound by what the seventh or I can't remember what circuit that was. The issue of qualifications would be defined by the federal rules of evidence in Daubert. On the issue of what's the amount of evidence that would be sufficient or not under Florida law would be an issue of substantive law. Counsel, we let you go way over your time. I thank you for your argument and I thank you as well, Mr. Ferraro. Thank you very much for a very interesting last case. You're muted, Mr. Ferraro. I'm sorry, Your Honor. Do I have some rebuttal? No, no, there's no more. That's it. We're done. Thank you very much. Thank you both. Have a good day.